FILED
AUG - 4 2021
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRCT COURT
EASTERN DISTRCT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **4:21CR00439 RLW/PLC** |
| ) | |
| ) | |
| DAVID M. SMILEY, ) | |
| ) | |
| Defendant. ) | |

## INDICTMENT

The Grand Jury charges that:

### COUNT ONE
### (Wire Fraud: 18 U.S.C. § 1343)

A. **Introduction**

At all times material to this Indictment, unless otherwise specified below:

1. The Economic Injury Disaster Loan Program ("EIDL") was a United States Small Business Administration ("SBA") program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

2. The SBA is an executive branch agency of the United States that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

3. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), was a federal law that was enacted in or around March 2020 to

1

provide emergency financial assistance to the millions of Americans suffering the economic impact caused by the COVID-19 pandemic. The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

4. To obtain an EIDL loan, a qualifying business was required to submit an application to the SBA and provide information about the business's operations, such as: (1) the number of employees, (2) gross revenues for the 12-month period preceding the disaster, and (3) cost of goods sold in the 12-month period preceding the disaster. For COVID-19 relief EIDL loans, the 12-month period ran from January 31, 2019, to January 31, 2020. A COVID-19 relief EIDL loan applicant was also required to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

5. EIDL loan applications were submitted directly to the SBA. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold. Any funds issued under an EIDL loan were issued directly by the SBA. EIDL loan funds could be used by the qualifying business for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

6. Defendant **DAVID M. SMILEY** resided in St. Charles County, Missouri, within the Eastern District of Missouri.

**B.    The Scheme to Defraud**

7. Beginning on or about July 8, 2020, and continuing through at least October 19, 2020, in the Eastern District of Missouri, and elsewhere, the defendant, **DAVID M. SMILEY**, with the intent to defraud, devised and intended to devise a scheme and artifice to defraud the SBA

2

and to obtain money and property from the SBA by means of material false and fraudulent pretenses, representations, and promises, as described further herein.

8. It was part of the scheme and artifice to defraud that, on or about July 8, 2020, the defendant submitted an online application for a COVID-19 relief EIDL loan from his home computer in St. Charles County, Missouri. The defendant's EIDL loan application was received by the SBA through a server located in Des Moines, Iowa.

9. It was further part of the scheme and artifice to defraud that the defendant listed as the "Business Legal Name" in the EIDL loan application the company name, "DC investments[.]" In the same EIDL loan application, the defendant listed himself as the 100% owner of DC investments, and he also wrote that DC investments had a business address in Wentzville, Missouri. In truth and fact, there was not a business registered with the Missouri Secretary of State's Office with name of "DC investments" that was associated with the defendant.

10. It was further part of the scheme and artifice to defraud that, in the defendant's EIDL loan application for DC investments, he listed the "Gross Revenues for the Twelve (12) Month[s] Prior to the Date of the Disaster (January 31, 2020)" as $175,000. In truth and fact, DC investments did not receive $175,000 in gross revenues during the specified date range.

11. It was further part of the scheme and artifice to defraud that, in the defendant's EIDL loan application for DC investments, he listed the "Number of Employees (As of January 31, 2020)" working at DC investments as 13 employees. In truth and fact, DC investments never employed more than two employees.

12. It was further part of the scheme and artifice to defraud that, in the defendant's EIDL loan application for DC investments, the defendant provided the following as the bank account associated with DC investments: Bank of America account number **** **** 3322. In

truth and fact, that bank account was a personal checking account held by the defendant. At the conclusion of the same EIDL loan application for DC investments, the defendant affirmed the following: "I hereby certify UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES that the above is true and correct."

13. It was further part of the scheme and artifice to defraud that, on or about July 29, 2020, the defendant completed and signed a Loan Authorization and Agreement for the DC investments EIDL loan. The Loan Authorization and Agreement adopted by the defendant included a number of terms, including that DC investments "will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter." The defendant also agreed—as part of the Loan Authorization and Agreement—that "[a]ll representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan."

14. It was further part of the scheme and artifice to defraud that, based on the representations made by the defendant in his EIDL loan application, the SBA authorized the EIDL loan to DC investments.

15. It was further part of the scheme and artifice to defraud that, on or about August 3, 2020, the defendant's personal Bank of America checking account (account number **** **** 3322) received a deposit via Automated Clearing House transfer from "SBAD Treas 310" with the EIDL loan proceeds in the amount of $54,900.

16. It was further part of the scheme and artifice to defraud that the defendant spent the EIDL loan proceeds on personal expenses, not associated with DC investments, including on car

payments, car repairs for a Cadillac Escalade, private school payments, and crypto-currency purchases.

## C. **Wire Transmission**

17. On or about July 8, 2020, within the Eastern District of Missouri, and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the same,

**DAVID M. SMILEY,**

the defendant herein, did knowingly transmit and cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, signals, pictures, or sounds, including an electronic EIDL loan application for DC investments that he sent to the SBA through a server in Des Moines, Iowa from the defendant's residence in the Eastern District of Missouri.

All in violation of Title 18, United States Code, Section 1343.

## **FORFEITURE ALLEGATION**

The United States Attorney further alleges there is probable cause that:

1. Pursuant to Title 18, United States Code, Sections 982(a)(2), upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in Count One, the defendant shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation, which is at least $54,900.

2. Specific property subject to forfeiture includes, but is not limited to, the following:

5

      a.    $25,000 from the defendant's Bank of America checking account (account number **** **** 3322).

3. If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

Date:.                                                            A TRUE BILL.


                                                                                   FOREPERSON

SAYLER A. FLEMING
United States Attorney

Derek J. Wiseman, #67257MO
Assistant United States Attorney